# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TONY HEWITT,                                     )
                                 )      3:11-cv-00700-HDM-VPC
            Plaintiff,                         )
                                 )
      v.                                          )      **REPORT AND RECOMMENDATION**
                                 )      **OF U.S. MAGISTRATE JUDGE**
JOHN PEERY, *et al.,*                            )
                                 )
              Defendants.                       )      August 8, 2013
_____ )

       This Report and Recommendation is made to the Honorable Howard D. McKibben, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#33).[1]  Plaintiff opposed (#38) and defendants replied (#41).  The court has thoroughly reviewed the record and recommends that defendants' motion for summary judgment (#33) be granted.

## I.  HISTORY & PROCEDURAL BACKGROUND

       Plaintiff Tony G. Hewitt, a *pro se* inmate, is currently incarcerated at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC") (#4, p. 1).  On October 7, 2011, plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that prison officials violated his Eight Amendment rights.  *Id.* at 2-4.  The court screened the complaint pursuant to 28 U.S.C. § 1915A, and allowed the following claims to proceed: (Count I) deliberate indifference to plaintiff's serious medical needs against Nurse John Peery and Nurse Sandra Snider; (Count II) excessive force against Lieutenant Adolf Stankus, Correctional Officer

---

[1] Refers to the court's docket numbers.

Shane Dennis and Correctional Officer Adam Luis; and (Count IV) deliberate indifference to plaintiff's safety against Correctional Officer Shane Dennis (#27, pp. 1-2).

### _Counts I and II:  Deliberate Indifference to Serious Medical Needs & Excessive Force Claims-August 2010_

Counts I and II of plaintiff's complaint concern the same nucleus of facts that occurred in early August 2010.  Plaintiff alleges that on August 5, 2010, a member of NNCC's medical staff examined his hemorrhoid, but postponed surgery to a later date (#4, p. 6).  On August 6, 2010, plaintiff used the emergency "man down" call system to request immediate medical assistance because when he attempted a bowel movement, blood squirted from his rectum, causing severe pain. _Id_.  Nurse Kathi DelCarlo responded to the call.  _Id_.  Plaintiff alleges that Nurse DelCarlo poked his hemorrhoid, causing plaintiff to scream in severe pain and hit his head against the wall.  _Id_. at 7. Nurse DelCarlo informed plaintiff that the "man down" call system was used for emergency purposes only (such as a heart attack), and explained that plaintiff's hemorrhoid did not warrant emergency treatment.  _Id_. at 6.  Plaintiff told Nurse DelCarlo that she should not use so much force when examining his hemorrhoid, and stated that if she did not want to help him she could leave.  _Id_. at 7.  In response, Correctional Officer Julliette Roberson told Nurse DelCarlo to exit plaintiff's cell. _Id_.

Plaintiff alleges that defendant Stankus arrived and screamed at plaintiff to get on the floor and place his hands on his head.  _Id_.  Defendant Stankus pointed his Taser at plaintiff's face while defendants Luis and Dennis roughly handcuffed plaintiff's arms behind his back.  _Id_.  The two officers then jerked plaintiff onto his feet and dragged him backwards out of his cell.  _Id_. at 8.  As defendants Luis and Dennis dragged plaintiff backwards, his pants fell down.  _Id_.  Plaintiff alleges that defendant Stankus pulled up plaintiff's pants with such force that he lifted plaintiff from the ground and plaintiff's hemorrhoid burst.  _Id_.

Plaintiff alleges that defendants then placed him in a shower cage, where he again utilized the emergency "man down" call system, as he was bleeding from the rectum and in severe pain. *Id*. at 9. Correctional officers took plaintiff to the infirmary, where defendants Peery and Snider refused to treat plaintiff and simply directed the officers to escort plaintiff back to the lock-up. *Id*. at 9-10. Later that evening, plaintiff again utilized the emergency "man down" call system because he was bleeding and in pain. *Id*. at 10. Plaintiff showed the extent of his blood loss to the responding nurses by soaking up his blood with toilet tissue. *Id*. Nonetheless, the nurses denied plaintiff medical attention pursuant to defendant Peery and Snider's orders. *Id*. On August 7, 2010, the "pill" nurse also denied plaintiff medical attention per defendant Peery and Snider's instructions. *Id*. Plaintiff alleges that by August 8, 2010, he had lost so much blood that he passed out. *Id*. at 10.

Defendants allege that on August 4, 2010, plaintiff activated the emergency "man down" call system, complaining that his hemorrhoid was bleeding (#33-1, Ex. A, p. 1 (*sealed*)). The responding nurse examined plaintiff and determined that his rectal bleeding was intermittent and his condition was "non-urgent" at that time. *Id*. She recommended that plaintiff follow-up at NNCC's infirmary. *Id*.

On August 5, 2010, plaintiff went to NNCC's infirmary where a physician offered to lance the hemorrhoid (#33-1, Ex. B, p. 1 (*sealed*); #33-1, Ex. C, p. 1 (*sealed*); #33-1, Ex. D, ¶ 6). However, plaintiff opted to wait the weekend to see if the hemorrhoid resolved itself. *Id*. The physician gave plaintiff four suppositories to address any discomfort, and told him to shower, take sitz baths and return to the infirmary if necessary. *Id*.

On the evening of August 5, 2010, plaintiff activated the emergency "man down" call system once again (#33-1, Ex. A, p. 2 (*sealed*)). The responding nurse examined plaintiff's anus, and noted that his hemorrhoid had dried up and that a tissue in plaintiff's cell only had a small amount of blood

on it.  *Id.*  She advised plaintiff to continue taking his prescribed suppositories and use hemorrhoid cream.  *Id.*

On August 6, 2010, plaintiff activated the emergency "man down" call system yet again (#33-1, Ex. A, p. 3 (*sealed*)).  The responding nurse, Kathi DelCarlo, examined plaintiff but found no blood on his hemorrhoid or underwear, and stated that there was no reason for a "man down" call (#33-1, Ex. F, ¶¶ 4-5).  As Nurse DelCarlo conducted her examination, plaintiff became highly agitated (#33-1, Ex. F, ¶ 7; #33-1, Ex. G, ¶ 7).  He stood up and began cursing at Nurse DelCarlo while swinging his arms around in an aggressive manner (#33-1, Ex. F, ¶ 7; #33-1, Ex. G, ¶ 8; #33-1, Ex. H, ¶ 6).  Correctional Officer Roberson and defendant Dennis told plaintiff to calm down; however, plaintiff disregarded those orders (#33-1, Ex. H, ¶ 6).  Accordingly, the officers pulled Nurse DelCarlo out of plaintiff's cell for her protection (#33-1, Ex. G, ¶ 8; #33-1, Ex. H, ¶ 6).

Due to plaintiff's behavior, Correctional Officer Roberson and defendant Dennis called defendant Stankus to assist in escorting plaintiff  to a more restrictive housing unit (#33-1, Ex. G, ¶ 9; #33-1, Ex. H, ¶ 6; #33-1, Ex. I, ¶ 3).  After Defendant Stankus arrived, defendants Dennis and Luis entered plaintiff's cell to restrain him (#33-1, Ex. G, ¶ 9; #33-1, Ex. H, ¶ 7).  As a precautionary measure, defendant Stankus removed his Taser from its holster (#33-1, Ex. I, ¶ 4).  However, plaintiff was restrained without incident and defendant Stankus put the Taser away (#33-1, Ex. G, ¶ 9; #33-1, Ex. H, ¶ 7).  Defendants then escorted plaintiff to the administrative segregation unit (#33-1, Ex. G, ¶ 9; #33-1, Ex. I, ¶ 5; #33-1, Ex. J, ¶ 5).  The escort was uneventful except that as the group approached the administrative segregation unit, plaintiff's pants fell down (#33-1, Ex. G, ¶ 10; #33-1, Ex. I, ¶ 6; #33-1, Ex. J, ¶ 6).  Since plaintiff was handcuffed, defendant Stankus assisted plaintiff by pulling his pants back up to his waist.  *Id.*  Defendants state that during their interaction with

plaintiff, they did not observe any blood in his cell, on his body or on his clothing, and they did not use force against plaintiff (#33-1, Ex. G, ¶ 11; #33-1, Ex. I, ¶¶ 8-9; #33-1, Ex. J, ¶ 9).

After plaintiff was transferred to the administrative segregation unit, he activated the emergency "man down" call system for the second time that day (#33-1, Ex. D, ¶ 8; #33-1, Ex. E, ¶ 4).  Defendants Peery and Snider asked correctional officers to bring plaintiff to the infirmary to discuss his misuse of the emergency "man down" call system (#33-1, Ex. D, ¶ 8; #33-1, Ex. E, ¶ 4). Defendants Peery and Snider reviewed plaintiff's medical records and confirmed that plaintiff's hemorrhoid had been examined numerous times and that he had received adult diapers to address any bleeding (#33-1, Ex. D, ¶ 8; #33-1, Ex. E, ¶ 5).  Defendants advised plaintiff that his hemorrhoid was not a serious medical condition and that the emergency "man down" call system was only intended for medical emergencies (#33-1, Ex. D, ¶ 8; #33-1, Ex. E, ¶ 7).

Despite these warnings, on August 7, 2010, plaintiff activated the emergency "man down" call system a fifth time (#33-1, Ex. D, ¶ 10).  The responding nurse examined plaintiff and found that he was not bleeding, although there was a small amount of blood on his adult diaper (#33-1, Ex. A, p. 4 (*sealed*)).  The nurse deemed the "man down" call to be so unwarranted that she noted in plaintiff's medical records that he should be charged for the call.   *Id*.  On August 9, 2010, an NDOC doctor lanced plaintiff's hemorrhoid (#33-1, Ex. B, pp. 1-2 (*sealed*)).

**_Count IV:  Deliberate Indifference to Safety-May 2011_**

In a separate incident on May 3, 2011, plaintiff alleges that defendant Dennis served him a meal with "bird feces splashed all over the top and running down the sides of the container." *Id*. at 14.  Plaintiff watched as his food was attacked by birds and squirrels, since the food sat outside NNCC's infirmary prior to delivery.  *Id*.  When plaintiff received his food, there were holes and bite

marks in the container.  *Id*.  Plaintiff alleges that this resulted in contamination, which caused him to suffer stomach injuries, severe pain and bloody stools for months.  *Id*.

Defendants respond that the NNCC culinary prepares all meals for inmates housed in the NNCC Regional Medical Facility ("RMF") (#33-1, Ex. G, ¶ 14).  The culinary places the food in a Styrofoam container, wraps the container in cellophane, and then delivers the meals to the RMF on a food cart.  *Id*. at ¶¶ 15-16.  Correctional officers assigned to the RMF then distribute the meals to the inmate-patients.  *Id*. at ¶ 14.  Defendant Dennis states that he has never knowingly served a meal to an inmate that had bird feces on the outside of the container, but that in any case, the Styrofoam container and cellophane would prevent the food from being contaminated.  *Id*. at ¶ 16.  Defendant Dennis also states that when he served plaintiff the allegedly contaminated meal, plaintiff did not inform him that there was anything wrong with the food he had received.  *Id*. at ¶ 18.  In addition, plaintiff's medical records do not indicate that he became ill from food-borne contamination (#33-1, Ex. L, p. 5 (*sealed*)).  Although plaintiff submitted a medical kite complaining about the May 3, 2011, incident, he did not complain that he suffered any illness as a result of the alleged contamination.  *Id*.

Defendants move for summary judgment on the grounds that: (1) defendants Peery and Snider were not deliberately indifferent to plaintiff's serious medical needs; (2) defendants Stankus, Dennis and Luis did not subject plaintiff to excessive force; and (3) defendant Dennis was not deliberately indifferent to plaintiff's safety (#33, p. 2).  Defendants attach several documents to support their motion for summary judgment, including: (1) plaintiff's NDOC Unusual Occurrence Reports (#33-1, Ex. A (*sealed*));[2] (2) plaintiff's NDOC progress notes (#33-1, Ex. B (*sealed*));[3] (3)

---

[2] Authenticated by the declaration of Wendy M. McDaniel (#33-1, Ex. M, ¶ 5).
[3] Authenticated by the declaration of Wendy M. McDaniel (#33-1, Ex. M, ¶ 5).

plaintiff's NDOC physician orders (#33-1, Ex. C (*sealed*));[4] (4) the declaration of John Peery (#33-1, Ex. D); (5) the declaration of Sandra Snider (#33-1, Ex. E); (6) the declaration of Kathi DelCarlo (#33-1, Ex. F); (7) the declaration of Shane Dennis (#33-1, Ex. G); (8) the declaration of Julliette Roberson (#33-1, Ex. H); (9) the declaration of Adolpf Stankus (#33-1, Ex. I); (10) the declaration of Adam Luis (#33-1, Ex. J); (11) plaintiff's NDOC progress notes (#33-1, Ex. K, (*sealed*));[5] and (12) plaintiff's NDOC medical kites (#33-1, Ex. L (*sealed*)).[6]

Plaintiff opposes defendants' motion on the grounds that: (1) defendants Peery and Snider were deliberately indifferent to plaintiff's serious medical needs because they refused to give plaintiff needed medical treatment; (2) defendants Stankus, Dennis and Luis subjected plaintiff to excessive force; and (3) defendant Dennis was deliberately indifferent to plaintiff's safety because he served plaintiff a meal covered in fecal matter, and containing holes and bite marks from squirrels and birds (#38, pp. 2-4).

As a preliminary matter, the court notes that plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II.  LAW & ANALYSIS

### A.  Legal Standards

#### i.  42 U.S.C. § 1983

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290

---

[4] Authenticated by the declaration of Wendy M. McDaniel (#33-1, Ex. M, ¶ 5).
[5] Authenticated by the declaration of Wendy M. McDaniel (#33-1, Ex. M, ¶ 5).
[6] Authenticated by the declaration of Wendy M. McDaniel (#33-1, Ex. M, ¶ 5).

(1999).  Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere.  *Albright v. Oliver,* 510 U.S. 266, 271 (1994).  To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

### ii.  Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court will grant summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d

764, 773-74 (9th Cir. 2002).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson*, 477 U.S. at 248.  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted, but must only determine whether there is a genuine issue of material fact that must be resolved by trial.  *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion.  *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## B. ANALYSIS

### i. Deliberate Indifference to Plaintiff's Serious Medical Needs

A prisoner's claim of inadequate medical care arises under the Eighth Amendment.  *See Whitley v. Albers*, 475 U.S. 312, 319 (1986).  The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  To prevail in an action alleging cruel and unusual punishment, a plaintiff's case must satisfy an objective standard—that the deprivation was serious enough to amount to cruel and unusual punishment; and a subjective standard—deliberate indifference.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991).  A prison official violates the Eighth Amendment when he

responds with deliberate indifference to an inmate's serious medical needs.  *Farmer*, 511 U.S. at 834.

The objective requirement of a "serious medical need" is met if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle*, 429 U.S. at 104).  In this circuit, examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety."  *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319).  The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other."  *Id.* at 836.  To prove deliberate indifference, a plaintiff must demonstrate that prison staff denied, delayed, or intentionally interfered with medical treatment, or that the manner in which prison staff provided medical care indicated deliberate indifference; and that plaintiff sustained damages as a result of such conduct.  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Prison officials have wide discretion when determining the nature and extent of medical treatment to provide to inmates in their care.  *See Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986).  Prison medical staff do not violate the Eighth Amendment simply because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient.  *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).  Moreover, "mere delay of surgery, without more, is

1   insufficient to state a claim of deliberate medical indifference." *Shapley v. Nevada Bd. of State*

2   *Prison Com'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam); *accord McGuckin v. Smith*, 974 F.2d

3   1050, 1060 (9th Cir. 1992).

4

5        Plaintiff asserts that defendants Peery and Snider were deliberately indifferent to his serious

6   medical needs (#38, p. 2).  Plaintiff alleges that his hemorrhoid caused him severe pain and that he

7   experienced excessive blood loss when his hemorrhoid burst during escort to the administrative

8   segregation unit (#4, p. 8).  Plaintiff alleges that despite his complaints, defendants Peery and Snider

9   refused to treat him, and also ordered NNCC nursing staff to deny him needed medical attention

10  (#38, pp. 4-6; #4, pp. 7,9).

11

12       The court finds that plaintiff's hemorrhoid does not constitute a "serious medical need" under

13  the Eighth Amendment.  Plaintiff's medical records reveal that between August 4, 2010 and August

14  10, 2010, NNCC medical staff examined plaintiff's hemorrhoid eight times (#33-1, Ex. A, pp. 1-4

15  (*sealed*)).  At each of these examinations, the medical providers noted that there was only a small

16  amount of visible blood and that plaintiff's condition was "non-urgent."  *Id.*

17

18       Although plaintiff claims that his hemorrhoid constituted a "serious medical need,"

19  "[u]ncorroborated and self-serving testimony" without more, will not create a genuine issue of

20  material fact precluding summary judgment.  *See Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054,

21  1061 (9th Cir. 2002).  Defendant Peery states that a hemorrhoid is not a medical emergency and does

22  not pose a serious risk of harm to the patient's health (#33-1, Ex. D, ¶ 11).  Although a hemorrhoid

23  can be uncomfortable and may bleed after a bowel movement, it is a minor ailment.  *Id.*  The court

24  agrees with defendant Peery's assessment that "[plaintiff] had a minor condition and received

25  appropriate, if not excessive, medical care [for his hemorrhoid]" (#33-1, Ex. D, ¶ 14).

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Further, although plaintiff claims that his hemorrhoid burst on August 6, 2010, and that he passed out from excessive blood loss the night of August 8, 2010, the record does not support these claims. First, plaintiff's hemorrhoid was lanced on August 9, 2010 (#33-1, Ex. D, ¶ 13). If plaintiff's hemorrhoid had already burst on August 6, 2010, there would have been no need to lance it three days later. *Id*. Second, if plaintiff had lost enough blood to cause him to pass out, he would not simply wake up the next morning. *Id*. at ¶ 12. Third, Nurse Mann examined plaintiff before he went to sleep on August 7, 2010, and reported that there was no visible bleeding from plaintiff's rectum and that he still had a hemorrhoid (#33-1, Ex. A, p. 4 (*sealed*)). Contrary to plaintiff's claims, there is no evidence that plaintiff's hemorrhoid burst or that he suffered excessive bleeding.

Even assuming *arguendo* that plaintiff's hemorrhoid constituted a serious medical need, the court finds that defendants Peery and Snider did not exhibit deliberate indifference to plaintiff's medical condition. Prison medical staff do not violate the Eighth Amendment simply because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient. *Franklin*, 662 F.2d at 1344. The fact that defendants Peery and Snider did not examine plaintiff when he reported to the infirmary on August 6, 2010, does not evidence deliberate indifference on their part. Prior to plaintiff's arrival at the infirmary, defendants Peery and Snider reviewed plaintiff's medical records and noted that he had been examined four times over the previous three days, that he had received adult diapers to address any bleeding, and that his condition was minor (#33-1, Ex. D, ¶ 8; #33-1, Ex. E, ¶¶ 5-6).

Further, plaintiff's allegation that defendants Peery and Snider instructed NNCC nurses to deny plaintiff needed medical attention is unfounded. After defendants Peery and Snider spoke with plaintiff about proper use of the emergency "man down" call system, plaintiff nevertheless continued to request unnecessary "man down" assistance and continued to receive treatment. For example, on

August 7, 2010, Nurse Mann noted that plaintiff's "man down" call was so unwarranted that he should be charged; however, she still examined him (#33-1, Ex. A, p. 4 (*sealed*)).  On August 9, 2010, plaintiff went to NNCC's infirmary where a physician lanced his hemorrhoid (#33-1, Ex. B, p. 4 (*sealed*); #33-1, Ex. D, ¶ 13).  The next day, plaintiff went to the infirmary for a follow-up evaluation (#33-1, Ex. B. p. 2 (*sealed*)).  Even though plaintiff continued to abuse the "man down" call system, NNCC's medical staff continued to respond to all of plaintiff's "man down" calls and continued to examine him at his scheduled appointments (#33-1, Ex. A, pp. 1-4 (*sealed*); #33-1, Ex. B, pp. 1-2 (*sealed*)).

Plaintiff has failed to produce any evidence that defendants Peery and Snider denied, delayed or intentionally interfered with plaintiff's medical treatment or that these defendants acted in conscious disregard of a significant risk to plaintiff's health.  S*ee Hutchinson*, 838 F.2d at 394; *Jackson*, 90 F.3d at 332.  Accordingly, the court recommends that defendants' motion for summary judgment be granted as to plaintiff's Eight Amendment deliberate indifference to serious medical needs claim.

### ii.  Excessive Force

When a prisoner claims that his Eighth Amendment right to be free from cruel and unusual punishment has been violated based on a prison official's use of excessive force, the proper inquiry is whether the force resulted in the unnecessary and wanton infliction of pain or suffering.  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).  To determine whether the force used was unnecessary and wanton, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id*. at 7.  In making this determination, the court considers the following factors: (1) the extent of the prisoner's injury, (2) the need for force, (3) the relationship between that need and the amount of force used, (4) the threat

reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response.  *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  There is no need to show that the prisoner suffered a serious injury as a result of the force, but the lack of such an injury is relevant to the inquiry.  *Id.* at 7-9; *see also Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).  The court must give deference to prison officials when reviewing the use of force and cannot substitute its own judgment for the judgment of prison officials.  *Whitley*, 475 U.S. at 322.  Unless the evidence supports a reliable inference of wantonness, the case should not go to the jury.  *Id.*

Plaintiff alleges that on August 6, 2010, defendants Stankus, Dennis and Luis used excessive force while escorting him to the administrative segregation unit (#4, p. 7).  Plaintiff contends that defendants Dennis and Luis dragged him backwards out of his cell, which caused plaintiff's pants to fall down to his ankles.  *Id.*  Plaintiff also contends that even though defendant Stankus knew that plaintiff had a large hemorrhoid, he pulled plaintiff's pants up with such force that plaintiff's hemorrhoid burst.  *Id.*

Defendants assert that there is no evidence that defendants Stankus, Luis and Dennis used excessive force while escorting plaintiff to the administrative segregation unit (#33, p. 12).  Defendants state that they did not drag plaintiff out of his cell.  Instead, he walked out of his cell and to the administrative segregation unit under his own power (#33-1, Ex. G, ¶ 9; #33-1, Ex. H, ¶ 8; #33-1, Ex. I, ¶ 5; #33-1, Ex. J, ¶ 5).  Defendants concede that plaintiff's pants fell down and defendant Stankus pulled them back up (#33-1, Ex. G, ¶ 10; #33-1 Ex. I, ¶ 6; #33-1, Ex. J, ¶ 6).  However, defendants contend that defendant Stankus did not pull plaintiff's pants up with such force that he was lifted off the floor or his hemorrhoid burst.  *Id.*  Defendants declare that they did not observe any blood in plaintiff's cell or on his person at any time during the escort, and that plaintiff

did not appear to be in any physical distress (#33-1, Ex. G, ¶ 11; #33-1, Ex. H, ¶ 10; #33-1, Ex. I, ¶¶ 8-9; #33-1, Ex. J, ¶ 9).

   *Hudson* requires the court to consider five factors in an excessive force claim. First, the record does not indicate that plaintiff suffered a serious injury during his escort to the administrative segregation unit. Plaintiff's unusual occurrence reports and progress notes do not support plaintiff's claims that his hemorrhoid burst during the escort or bled excessively afterwards (#33-1, Ex. A, p. 1 (*sealed*); #33-1, Ex. B, p. 1 (*sealed*)). Instead, plaintiff's medical records indicate that an NNCC physician lanced plaintiff's hemorrhoid three days after the alleged excessive force incident (#33-1, Ex. B, p. 2 (*sealed*); #33-1, Ex. D, ¶ 13). If the hemorrhoid had burst during plaintiff's escort to the administrative segregation unit, there would have been no need to lance the hemorrhoid three days later (#33-1, Ex. D, ¶ 13). Plaintiff has simply not submitted any evidence to suggest that he suffered any injury, let alone a serious injury, as a result of defendants' actions.

   Second, defendants reasonably concluded that minimal force was necessary under the circumstances. The need to transport plaintiff to the administrative segregation unit arose because plaintiff became hostile during Nurse DelCarlo's examination (#33-1, Ex. F, ¶ 7). Plaintiff began to curse loudly and swing his arms around in an aggressive manner (#33-1, Ex. F, ¶ 7; #33-1, Ex. G, ¶¶ 7-8; #33-1, Ex. H, ¶¶ 5-6). Defendant Dennis and Correctional Officer Roberson told plaintiff to calm down; however, plaintiff continued his abusive behavior, forcing the officers to step in and remove Nurse DelCarlo from plaintiff's cell (#33-1, Ex. F, ¶ 8; #33-1, Ex. G, ¶ 8; #33-1, Ex. H, ¶ 6). In response to plaintiff's outburst, defendants properly concluded that plaintiff should be transferred to the administrative segregation unit. *Id.* The court finds that defendants' use of force was necessary in this circumstance in order to safely escort plaintiff.

Third, there is a reasonable relationship between the need for force and the amount of force used.  The evidence indicates that very little force was needed to restrain and escort plaintiff since he obeyed the officers' orders once Nurse DelCarlo was removed from his cell (#33-1, Ex. G, ¶ 9; #33-1, Ex. H, ¶ 8; #33-1, Ex. I, ¶¶ 4-6; #33-1, Ex. J, ¶¶ 4-6).  As a precautionary measure, defendant Stankus removed his Taser from its holster; however, defendant Stankus did not use the Taser, as plaintiff was restrained without incident (#33-1, Ex. I, ¶ 4).  The evidence also indicates that when plaintiff's pants fell down, defendant Stankus used reasonable force to pull them back up (#33-1, Ex. G, ¶ 10; #33-1, Ex. I, ¶ 6; #33-1, Ex. J, ¶ 6).  As noted previously, although plaintiff claims that defendant Stankus pulled up his pants with such force that plaintiff's hemorrhoid burst, plaintiff does not support this claim with any evidence.  *See Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002) ("[u]ncorroborated and self-serving testimony" without more, will not create a genuine issue of material fact precluding summary judgment).  Defendants have produced multiple affidavits which indicate that defendant Stankus pulled up plaintiff's pants in a normal, non-violent fashion (#33-1, Ex. G. ¶ 10; #33-1, Ex. I, ¶ 6; #33-1, Ex. J, ¶ 6).  Further, NNCC medical staff examined plaintiff that evening, and again the following day, and noted that plaintiff had a large hemorrhoid that was not bleeding (#33-1, Ex. A, p. 4 (*sealed*); #33-1, Ex. B, p. 1 (*sealed*)).  In short, the record does not support plaintiff's claim that the amount of force used in this case was unnecessary or excessive.  Instead, the record reveals that defendants acted in good-faith and used a minimal amount of force to subdue an agitated and aggressive inmate.

Fourth, defendants reasonably perceived plaintiff's actions to constitute a threat.  During Nurse DelCarlo's examination, plaintiff became agitated and hostile (#33-1, Ex. F, ¶¶ 7, 9).  He cursed at Nurse DelCarlo and began to swing his arms around in an aggressive manner (#33-1, Ex. F, ¶ 7; #33-1, Ex. G, ¶ 8; #33-1, Ex. H, ¶ 6).  Because plaintiff's behavior created a dangerous

environment for Nurse DelCarlo, defendant Dennis and Correctional Officer Roberson were forced to step in and remove her from plaintiff's cell. *Id.* Defendants also properly escorted plaintiff to the administrative segregation unit due to his behavior. The court finds that defendants reasonably perceived plaintiff's actions to constitute a threat to NNCC medical staff, correctional staff, and the safety and security of the institution.

Fifth, defendants made several efforts to temper the severity of their response. Defendants gave plaintiff multiple opportunities to comply with verbal commands before undertaking a physical response. Both defendant Dennis and correctional officer Roberson asked plaintiff to calm down when he became agitated, but plaintiff refused (#33-1, Ex. F, ¶ 8; #33-1, Ex. G, ¶ 8; #33-1, Ex. H, ¶ 6). Only after this approach failed, did the officers remove Nurse DelCarlo from plaintiff's cell and call defendant Stankus to help escort plaintiff to the administrative segregation unit (#33-1, Ex. G, ¶ 9; #33-1, Ex. H, ¶ 6). The record reflects that once defendants Luis, Dennis and Stankus entered plaintiff's cell, he complied with orders and was restrained without incident. *Id.* The court concludes that defendants succeeded in tempering the severity of their response by handcuffing and escorting plaintiff using minimal force.

Finally, the court underscores its obligation to give deference to prison officials when reviewing the use of force. *Whitley*, 475 U.S. at 322; *see Beard v. Banks*, 548 U.S. 521, 530 (2006). Here, there is nothing in the record to suggest that defendants acted maliciously or sadistically to harm plaintiff. Instead, the evidence suggests that defendants applied minimal force in a good-faith effort to maintain discipline. As the Supreme Court has noted, the prisoner must point to sufficient evidence to demonstrate that he can prevail on the merits. *Whitley*, 475 U.S. at 322. Plaintiff has provided no evidence, by affidavit or otherwise, to contradict the account provided in defendants' investigation detail report and affidavits. In short, there is no evidence indicating that defendants

Luis and Dennis used excessive force when they restrained or escorted plaintiff, or that defendant Stankus used excessive force when he pulled up plaintiff's pants.

Accordingly, the court recommends that defendants' motion for summary judgment be granted as to plaintiff's Eighth Amendment excessive force claim.

### iii.   Deliberate Indifference to Plaintiff's Safety

Under the Eighth Amendment, prison officials must "ensure that prisoners are provided with adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted).  A prison official violates the Eighth Amendment when he or she responds with deliberate indifference to an inmate's health or safety. *Farmer*, 511 U.S. at 834.  If a prison official knows that an inmate faces a substantial risk of serious harm, yet disregards that risk by failing to take reasonable measures to abate it, he or she may be held liable. *Id*. at 825.  However, the Eighth Amendment only protects against objectively serious deprivations – deprivations that amount to a denial of the "minimal civilized measures of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  The prison official must have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citation omitted).  The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836.  Thus, mere negligence on the part of prison staff is insufficient to prove deliberate indifference. *Id*.

Plaintiff alleges that defendant Dennis served him a meal with "bird feces splashed all over the top and running down the sides of the container" (#4, p. 14).  Plaintiff states that he watched birds and squirrels attack his food from the window, and when he received his food, there were holes and bite marks in the container. *Id*.  Plaintiff contends that this resulted in contamination, which caused him to suffer stomach injuries, severe pain and bloody stools for months. *Id*.

The Ninth Circuit has found that under the Eighth Amendment, prisoners need only receive food that is adequate to maintain health – the food need not be tasty or aesthetically pleasing. *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (citation omitted).  "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."  *Id*. (citation omitted); *see also Green v. Atkinson*, 623 F.3d 278, 281 (5th Cir. 2010) ("A single incident of food poisoning or finding a foreign object in food does not constitute a violation of the constitutional rights of the prisoner affected."); *Wishon v. Gammon*, 978 F2d 446, 449 (8th Cir. 1992) (food that is routinely served cold or contaminated with foreign objects does not violate the Eighth Amendment when there is no evidence that the food presented an immediate danger to the inmate's health or that his health suffered as a result of the food).

Although plaintiff claims that defendant Dennis served him a meal covered in bird feces, and that after consuming this meal, he suffered stomach injuries, severe pain and bloody stools, plaintiff has produced no evidence to substantiate these allegations.  Further, the court finds that plaintiff's claim is belied by the record.

When the NNCC culinary prepares meals for inmates housed in the NNCC RMF, the culinary places the food in a Styrofoam container and wraps the container in cellophane (#33-1, Ex. G, ¶¶ 15-16).  Even if there were bird feces coating the outside of the container, although aesthetically displeasing, the food inside should have been protected from contamination.

Plaintiff did not inform defendant Dennis that there was anything wrong with the meal he received on May 3, 2011.  *Id*. at ¶ 18.  Plaintiff alleges that he informed Correctional Officer Garibaldi about the contaminated food, and that Garibaldi immediately "took the [contaminated]

container and apologized [for the incident] (#4, p. 14), an allegation which contradicts plaintiff's claim that he actually ate the food.

Although plaintiff filed a grievance on May 4, 2011, complaining that his food was covered with bird feces, he did not mention any illness or associated stomach injuries as a result of the allegedly contaminated food (#33-1, Ex. L, p. 5 (*sealed*)).  Plaintiff's May 7, 2011, progress notes state that he had "no complaints" and that he was "doing good" (#33-1, Ex. K, p. 2 (*sealed*)).  The progress notes also indicate that medical staff observed plaintiff exercising in his cell, which contradicts plaintiff's claims of severe pain.  *Id.*

Finally, plaintiff has not demonstrated that defendant Dennis had the requisite state of mind to support a deliberate indifference claim.  Defendant Dennis declares that he has never knowingly served a meal to an inmate that had bird feces on the outside of the container (#33-1, Ex. G, ¶ 16).  Defendant Dennis also states that he has never served an inmate a meal in which the container appeared to have been touched by birds or squirrels.  *Id.* at ¶ 17.  Plaintiff has not submitted any evidence to refute this declaration.

The court finds that there is no evidence to support plaintiff's claim that defendant Dennis exhibited deliberate indifference to plaintiff's safety.  Plaintiff has produced no evidence that his food was contaminated with bird feces or that he suffered any illness as a result of eating such food.  Plaintiff has also produced no evidence that defendant Dennis had the requisite state of mind to support a deliberate indifference claim.  Accordingly, the court recommends that defendants' motion for summary judgment be granted as to plaintiff's Eighth Amendment deliberate indifference to safety claim.[7]

---

[7] Because the court recommends that defendants' motion for summary judgment be granted, the court need not reach the issues of official capacity or qualified immunity.

### III.  CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that defendants are entitled to summary judgment in their favor, as there are no genuine issues of material fact for trial. Therefore, the court recommends that defendants' motion for summary judgment (#33) be **GRANTED** in its entirety.  The parties are advised:

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV.     RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#33) be **GRANTED** in its entirety.

**DATED:** August 8, 2013.

_____
**UNITED STATES MAGISTRATE JUDGE**